ORDERED.

**Dated: August 28, 2026**

Luis E. Rivera II
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In Re:

J.L.E.T. ENTERPRISES, LLC,

Debtor.
_______________________________/

Case No. 8:26-bk-00405-LER
Chapter 11

**MEMORANDUM OPINION AND ORDER GRANTING DEBTOR J.L.E.T. ENTERPRISES, LLC'S MOTION TO ASSUME UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY ON A FINAL OR, ALTERNATIVELY, INTERIM AND FINAL BASIS**

Before the Court is *Debtor J.L.E.T. Enterprises, LLC's Motion to Assume Unexpired Lease of Nonresidential Real Property on a Final or, Alternatively, Interim and Final Basis* ("**Motion to Assume**").[1] J.L.E.T. Enterprises, LLC ("**Debtor**") seeks approval under § 365 of the Bankruptcy Code[2] to assume its lease ("**Lease**") with 93 FLRPT, LLC (the "**Lessor**") for the use and possession

[1] Doc. No. 61.
[2] 11 U.S.C. § 101 - 1532 (the "**Bankruptcy Code**" or the "**Code**"). Unless otherwise indicated, all statutory references are to the Bankruptcy Code.

of the premises located in The Shoppes at UTC, a shopping center in University Park, Florida (the "**Leased Premises**").[3]

The Lessor objects to the Debtor assuming the Lease.[4] It argues the Lease requires the Debtor to operate a "Three Dog Bakery" franchise.[5] And the Debtor is now operating under the name "Lucy's Dog Bakery & Spa."[6] Thus, the Lessor argues, the Debtor is unable to cure all nonmonetary defaults as required by § 365(b)(1)(A).[7]

The Court held a hearing on the Motion to Assume on August 5, 2026.[8] At the conclusion of the hearing, the Court directed the Debtor and the Lessor to file any supplemental argument or caselaw by August 7, 2026, following which the Court would consider the matter.[9]

For the following reasons, the Court concludes that the Debtor can cure all material defaults on assumption and therefore meets the requirements of § 365 to assume the Lease. These are the Court's findings of fact and

[3] Doc. No. 61.
[4] *See generally* Doc. No. 68.
[5] *Id.*
[6] *See Declaration of Mark Chait in Support of Objection to Debtor's Motion to Assume Unexpired Lease* ¶ 2 (Doc. No. 96-1).
[7] *See* Doc. No. 68, at 3-4 (arguing the Debtor "cannot satisfy the prerequisites of assumption" because "the Debtor is unable to comply with the Lease's use covenant requiring the Debtor to operate a franchise").
[8] Doc. No. 95.
[9] On August 7, 2026, the Debtor filed the *Debtor J.L.E.T. Enterprises, LLC's Supplement to Motion to Assume Unexpired Lease of Nonresidential Real Property on a Final or, Alternatively, Interim and Final Basis* (Doc. No. 97). On the same date, the Lessor filed *93 FLRPT, LLC's Supplemental Memorandum of Law in Support of Objection to Debtor's Motion to Assume Unexpired Lease* (Doc. No. 96).

conclusions of law under Federal Rule of Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 4001 and 9014.

## I. Background

The Debtor is a Florida limited liability company specializing in "the sale of premium pet food, treats, and accessories, while offering professional pet grooming services."[10] Prior to bankruptcy, the Debtor operated at two locations under the trade name "Three Dog Bakery" pursuant to its franchise agreement (the "**Franchise Agreement**")[11] with Three Dog Bakery, LLC (the "**Franchisor**").[12]

The Debtor and the Lessor executed the Lease on February 8, 2017.[13] The Lease grants the Debtor use of the Leased Premises for a term of five years with an option for a five-year extension.[14] In 2022, the Debtor exercised its option to extend the Lease, which now expires on May 31, 2027.[15] The Lessor "will not, under any circumstances, renew or extend the Debtor's lease beyond its current term."[16]

---

[10] *Case Management Summary*, (Doc. No. 13 ¶ 1).
[11] *Franchise Agreement* (Doc. No. 34-1).
[12] *Id.* ¶ 2.
[13] *Lease* (Doc. No. 68-1).
[14] *Id.* 25.
[15] *Declaration of Mark Chait*, (Doc. No. 96-1 ¶ 7).
[16] *Id.*

The Debtor's financial difficulties arose from its efforts to expand its business.[17] In August 2024, the Debtor opened a second location (the "**Osprey Premises**").[18] But that location proved unsuccessful: "[a] general lack of foot traffic and signage, compounded by a hurricane, rendered the Osprey Premises undesirable and unprofitable for the Debtor."[19] The Debtor thereafter faced litigation seeking accelerated rent under the lease for the Osprey Premises, as well as disputed franchise fees.[20] In response to those financial pressures, the Debtor commenced this chapter 11 case on January 15, 2026.[21]

Early in the case, the Debtor obtained authority to reject the Franchise Agreement.[22] Then, when the Franchisor sought reconsideration, the Debtor negotiated a settlement to "release the Debtor and its principals from any further liability related to the Franchise Agreement."[23] The Court approved the settlement on August 12, 2026.[24]

Relieved of this obligation, the Debtor proposes to emerge from bankruptcy pursuant to a plan of reorganization funded by operations at the Leased Premises.[25] To that end, the Debtor asserts it is entitled to assume the

[17] *Case Management Summary* (Doc. No. 13 ¶¶ 5-7).
[18] The lease for the second location was executed on August 28, 2024. *See generally Agreed Motion to Reject Unexpired Lease of Nonresidential Real Property* (Doc. No. 49).
[19] Doc. No. 13 ¶ 7.
[20] *Id.* ¶¶ 7-9.
[21] *Id.* ¶ 9.
[22] Doc. No. 48.
[23] Doc. No. 87 ¶ 11.
[24] Doc. No. 98.
[25] *See generally J.L.E.T. Enterprises, LLC's Plan of Reorganization* (Doc. No. 54).

Lease because it fulfilled its obligations under the Lease prior to filing for bankruptcy relief and the only amounts arguably due are some $500 in fees.[26] And, since the petition date, the Debtor has paid all amounts due under the Lease.[27] Under these circumstances, the parties do not dispute that the Debtor can cure any monetary default and provide adequate assurance of future performance, as required by § 365(b). Their disagreement lies elsewhere.

The Lessor objects to the assumption of the Lease on three grounds. First, it contends that the Debtor's rejection of the Franchise Agreement constitutes an incurable default under the Lease.[28] Second, it asserts that the Debtor violated Section 47 of the Lease by installing or maintaining signage without the Lessor's required approval.[29] Third, the Lessor maintains that operation of an independent store at the Leased Premises would be incompatible with its leasing strategy for the Shoppes at University Town Center (the "**Shopping Center**"), which it characterizes as being predominantly occupied by nationally and regionally recognized retailers.[30]

---

[26] Doc. No. 61. *See also* Claim No. 6 (confirming Lessor's pre-petition claim consists of late fee totaling $475.73; an administrative "stub rent" claim of $4.18; and unliquidated rejection damages).
[27] *See id.* ¶ 10 ("Since the Petition Date, the Debtor has timely fulfilled all monetary obligations under the Lease as and when they accrued").
[28] Doc. No. 68 ¶¶ 7 & 8.
[29] Doc. No. 96-1 ¶ 6
[30] *Id.* ¶¶ 3-6.

The Debtor responds that it can satisfy § 365's requirements by curing any nonmonetary defaults upon assumption. In its view, the Lease requires only that it continues to operate the same type of business, i.e., a premium pet food and pet grooming boutique.[31]

**II. Legal Standard for Assuming an Unexpired Lease**

Section 365(a) authorizes a debtor, with court approval, to assume an unexpired lease.[32] Where the debtor is in default under the lease, however, § 365(b)(1) permits assumption only if the debtor: (1) cures the default or provides adequate assurance of a prompt cure; (2) compensates the nondebtor party for any actual pecuniary loss resulting from the default, or provides adequate assurance of prompt compensation; and (3) provides adequate assurance of future performance under the lease.[33]

When the asserted default arises from the debtor's failure to operate in conformity with a lease of nonresidential real property, § 365(b)(1)(A) requires cure "by performance at and after the time of assumption in accordance with such lease."[34] For a lease of space in a shopping center, § 365(b)(3) requires adequate assurance that assumption will remain subject to all lease provisions

[31] Doc. No. 97 ¶¶ 5-7.
[32] 11 U.S.C. § 365(a). *See also In re Chapin Revenue Cycle Mgmt., LLC*, 343 B.R. 728, 730 (Bankr. M.D. Fla. 2006).
[33] 11 U.S.C. § 365(b)(1)(A)-(C).
[34] 11 U.S.C. § 365(b)(1)(A). *See also In re Patriot Place, Ltd.*, 486 B.R. 773, 797 (Bankr. W.D. Tex. 2013) (explaining that 11 U.S.C. § 365(b)(1)(A) requires cure of nonmonetary default at assumption but excuses previous uncurable nonmonetary defaults).

and will not disrupt the shopping center's tenant mix or balance.[35] But courts generally do not treat every nonmonetary breach as an impediment to assumption. Rather, a nonmonetary default warrants cure—or, if incurable, may bar assumption—only where the breach is material or has caused substantial economic detriment to the nondebtor party.[36]

## III. Analysis

Here, the Debtor seeks to assume the Lease governing the premises from which it conducts its business.[37] There are no material monetary defaults under the Lease, and the parties do not dispute the Debtor's ability to provide adequate assurance of future payment performance.[38] The remaining issues are therefore limited to the asserted nonmonetary defaults: whether the Debtor can provide adequate assurance that its post-assumption operations

---

[35] *See generally* 3 COLLIER ON BANKRUPTCY ¶ 365.06 [5] (16th ed. 2026). *See also Trak Auto Corp. v. W. Town Ctr. LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 244 (4th Cir. 2004) (acknowledging that the purpose of § 365(b)(3)(C) "is to preserve the landlord's bargained-for protections with respect to premises use and other matters that are spelled out in the lease with the debtor-tenant"); *In re Toys "R" Us, Inc.*, 587 B.R. 304, 309 (Bankr. E.D. Va. 2018) (same).

[36] *See generally* 3 COLLIER ON BANKRUPTCY ¶ 365.06 [3](c) (16th ed. 2026). *In re Chapin Revenue Cycle Management, LLC*, 343 B.R. at 731 (allowing assumption where there was a default but was not material and no substantial economic detriment). *See also In re IYS Ventures, LLC*, 659 B.R. 308, 330–31 (Bankr. N.D. Ill. 2024) (court would not require rejection where no evidence alleged noncurable, nonmonetary defaults were material or caused substantial economic detriment); *In re New Breed Realty Enters., Inc.*, 278 B.R. 314, 321 (Bankr. E.D.N.Y. 2002), citing *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1990) ("Where the default is non-monetary and is not curable, the debtor is precluded from assuming an executory contract only if the default was material or if the default caused 'substantial economic detriment'").

[37] *See generally* Doc. No. 61.

[38] *See* Doc. No. 68 (asserting only a $479.91 cure claim).

will comply with the use provisions of the Lease, as § 365(b)(3)(C) requires, and whether it can provide adequate assurance that assumption will not disrupt the Shopping Center's tenant mix or balance, as § 365(b)(3)(D) requires.[39]

### A. Debtor's Rejection of the Franchise Agreement is Not a Material Default Under the Lease's Plain Terms

Section 365(b)(3)(C) requires a debtor seeking to assume a shopping-center lease to provide adequate assurance that its post-assumption performance will remain subject to all provisions of the lease, including use restrictions and exclusivity provisions.[40] The Lessor's principal objection is that the Debtor cannot satisfy that requirement because it no longer operates the premises as a franchised Three Dog Bakery.[41]

The Lessor contends that the Debtor's rejection of the Franchise Agreement gives rise to an incurable default under Section 2 of the Lease, which contains the Lease's use covenant.[42] According to the Lessor, the Lease and the Franchise Agreement between the Debtor and the Franchisor constitute an integrated transaction. On that premise, the Lessor reads Section 2's requirement that the premises be operated as "a Three Dog Bakery" to require the Debtor to operate a franchised Three Dog Bakery at the Leased

---

[39] *Id.* ¶¶ 6-8.
[40] 11 U.S.C. § 365(b)(3)(C).
[41] Doc. No. 96 ¶ 3-4.
[42] Doc. No. 68 ¶ 9.

Premises.[43] The Lessor thus argues that, because the Debtor has rejected the Franchise Agreement, it cannot cure the alleged default and may not assume the Lease.[44]

The Lessor acknowledges that the Lease is unambiguous.[45] The Court therefore construes the Lease under Florida law and settled principles of contract interpretation.[46] Where, as here, an agreement is clear, complete, and unambiguous, the Court need not resort to judicial construction or extrinsic evidence; it must enforce the agreement according to its plain terms.[47] The parties' intent is determined from the four corners of the agreement,[48] and "the legal effect of its provisions should be determined from the words of the entire contract."[49]

---

[43] *Id.* ¶ 8.
[44] Doc. No. 96 ¶ 6.
[45] Doc. No. 96 ¶ 7 (The Lessor objects to the Court's consideration of any parol evidence to vary, contradict, or modify the unambiguous terms of the use restriction set forth in sections 2 and 3 of the Lease. *See Prime Homes, Inc. v. Pine Lake, LLC*, 84 So. 3d 1147, 1152 (Fla. 4th DCA 2012) ("Parol evidence is inadmissible to contradict, vary, or modify terms which are unambiguously contained within a written agreement.")
[46] *Sunshine Gasoline Distributors, Inc. v. Biscayne Enters., Inc.*, 139 So. 3d 978, 980 (Fla. 3d DCA 2014).
[47] *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 50 (Fla. 1st DCA 2005).
[48] *Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011).
[49] *Michael Anthony Co. v. Palm Springs Townhomes*, 174 So. 3d 428, 432 (Fla. 4th DCA 2015) (quoting *Khosrow Maleki, P.A. v. M.A. Hajianpour, M.D., P.A.*, 771 So. 2d 628, 631 (Fla. 4th DCA 2000).

Since February 8, 2017, the Debtor has continuously operated its business at the Leased Premises under the Lease.[50] The provisions relevant to the parties' dispute provide:

> THIS AGREEMENT, made this 8th day of February 2017, between 93 FLRPT, LLC ("Lessor"), having offices at 7978 Cooper Creek Boulevard, Suite # 10c, University Park, Florida 34201, party of the first part, and JLET Enterprises, LLC d/b/a THREE DOG BAKERY ("Lessee"), a Florida limited liability company, having offices at Sarasota, Florida 34231, part of the second part.[51]
>
> * * *
>
> USE
>
> 2. Lessee covenants and agrees to use the Demised Premises for the following purpose only: The operation of a Three Dog Bakery store with the retail sale of pet supplies and baked goods and food for pets.[52]
>
> * * *
>
> SIGNS, BUILDING ALTERATIONS AND CHANGES
>
> 3. The Lessee shall not use the Demised Premises for any other purpose than as above stated, nor erect or display any signs on the Demised Premises, nor make any alterations, additions or improvements to or upon the Demised Premises without prior written consent of the Lessor, not make or permit any defacement, injury or waste in, to or about the Demised Premises.[53]

The Lessor is correct that, where a nonresidential real-property lease is integrated with another executory agreement, a debtor may not assume the lease without curing defaults under the related agreement.[54] But, here, the

---

[50] Doc. No. 61.
[51] Doc. No. 68-1, at 1.
[52] *Id.* § 2.
[53] *Id.* § 3.
[54] *In re FPSDA I, LLC*, 450 B.R. 392, 398 (Bankr. E.D.N.Y. 2011) ("Because each of the Dunkin' Brands Lease and the respective franchise agreement constitute one controlling

Lease contains no indication that it is integrated with the Franchise Agreement—or with any other agreement. It neither references the Franchise Agreement nor identifies the Debtor's use of the name "Three Dog Bakery" as a franchise.[55] Indeed, the Lease does not use the terms "franchise," "franchisee," or "franchisor," and it does not otherwise describe a contractual relationship among the Debtor, the Franchisor, and the Lessor.[56]

The authorities that the Lessor relies on are distinguishable. Each involved agreements that were expressly cross-referenced or otherwise demonstrably interdependent. Here, by contrast, the Lease does not refer to the Franchisor, the Franchise Agreement, or even the existence of a franchise. The Court therefore cannot conclude from the four corners of the Lease that it is integrated with the Franchise Agreement.

The dispositive issue is whether Section 2's reference to the Debtor's trade name constitutes a material use restriction. As noted above, an asserted nonmonetary default precludes assumption only if it is material or causes

agreement, the Debtors cannot assume a Dunkin' Brands Lease unless they cure not only the defaults under the Lease but also any defaults under the respective franchise agreement"); *In re Szenda*, 406 B.R. 574, 582 (Bankr. D. Mass. 2009) (finding the franchise agreement and the lease to be economically interrelated and interdependent so that the debtor must assume the franchise agreement to assume the lease); *Matter of E. Hampton Sand & Gravel Co., Inc.*, 25 B.R. 193, 199 (Bankr. E.D.N.Y. 1982) (finding the "lease is part and parcel of one unified transaction whereby the creditor sold its concrete manufacturing business to the debtor" and that assumption of the lease would require the debtor to make payments under the note relating to the purchase of the business).

[55] Doc. No. 68-1.

[56] *Id.*

"substantial economic detriment" to the nondebtor party.[57] Under Florida law, a breach is material only when the nonperformance "go[es] to the essence of the contract" and is sufficiently significant to discharge the injured party from its own further contractual obligations.[58] "Trivial noncompliance and minor failings do not constitute material breaches."[59] The Lessor therefore bears the burden of showing that the Debtor's continued operation under the name "Three Dog Bakery" is a material obligation under the Lease.

It is not. Section 2 does not require the Debtor to operate a franchise, much less a franchised Three Dog Bakery. Rather, Section 2 refers to the Debtor's trade name, first identified in the Lease's preamble, in describing the tenant and its contemplated business. The operative focus of the use covenant is not the Debtor's trade name or franchise status, but its operation of a retail

---

[57] *See generally* 3 COLLIER ON BANKRUPTCY ¶ 365.06 [3](c) (16th ed. 2026). *See also In re IYS Ventures, LLC*, 659 B.R. at 330–31 ("[I]f a nonmonetary default cannot be cured, this will not necessarily preclude a debtor or trustee from assuming an executory contract. It is only if that noncurable, nonmonetary default was *material* or if it caused *substantial economic detriment* that it should bar assumption"); *In re Chapin Revenue Cycle Management, LLC*, 343 B.R. at 731; *In re New Breed Realty Enterprises, Inc.*, 278 B.R. at 321, citing *In re Joshua Slocum Ltd.*, 922 F.2d at 1092.

[58] *MDS (Canada), Inc. v. Rad Source Techs., Inc.*, 822 F. Supp. 2d 1263, 1298 (S.D. Fla. 2011) ("To constitute a material breach, a party's 'nonperformance of a contract must be such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part but a [party's] failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach.'"), quoting *Atlanta Jet v. Liberty Aircraft Servs., LLC*, 866 So. 2d 148, 150 (Fla. 4th DCA 2004) (citing *Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972). *Covelli Fam., L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008); *Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470, 471 (Fla. 4th DCA 2003).

[59] *Burlington & Rockenbach, P.A. v. L. Offs. of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. 5th DCA 2015), citing *Covelli Family, L.P.*, 977 So. 2d at 752.

dog bakery. Nor would a change in the Debtor's trade name alter its property rights, contractual obligations, or liability for obligations previously incurred.[60]

The Court also considers the extent to which the asserted breach would deprive the Lessor of the benefit it reasonably expected from the parties' exchange.[61] The plain language of the Lease does not require that the Leased Premises be occupied by a franchise, operated under the Three Dog Bakery trade name, or governed by a Franchise Agreement. Accordingly, the Debtor's use of a different trade name would not deprive the Lessor of any benefit reasonably contemplated by the Lease.

This conclusion does not depend on construing an ambiguity against the Lessor as the party that furnished the Lease. The Lease provides that it was negotiated at arm's length and with the opportunity for counsel, and the Court finds the relevant provisions unambiguous. But the absence of contractual language requiring a franchise remains significant. The Lessor asks the Court to read into the Lease a franchise-operation requirement that the parties did not express. They could have required operation as a franchise and

---

[60] *Corp. Exp. Off. Prods., Inc. v. Phillips*, 847 So. 2d 406, 414 (Fla. 2003) (liabilities and property rights are not altered by a name change); *Stewart v. Preston*, 80 Fla. 473, 86 So. 348, 349 (1920) ("The change in the name of a corporation has no effect whatever upon its property, rights, or liabilities. It continues as before responsible in its new name for liabilities previously contracted or incurred, and has the right to sue on contracts made or liabilities incurred to it - before the change.")

[61] *Jenkins*, 913 So. 2d at 54, citing Restatement (Second) of Contracts § 241, comment b (1981) ("[A]n important circumstance in determining whether a failure is material is the extent to which the injured party will be deprived of the benefit which he reasonably expected from the exchange").

incorporated the Franchise Agreement through an express reference or other language tying the two agreements together. They did not. The Court may not rewrite an unambiguous agreement to supply a term the parties omitted.[62]

The Debtor must therefore provide adequate assurance that it will continue to operate the Leased Premises as a store engaged in "the retail sale of pet supplies and baked goods and food for pets," as Section 2 requires. But neither § 365(b)(3)(C) nor the Lease requires the Debtor to continue operating under the Three Dog Bakery trade name.[63]

### B. The Operation of an Independent Store at the Leased Premises Will Not Disrupt Any Tenant Mix or Balance in the Shopping Center

Section 365(b)(3)(D) requires adequate assurance that assumption of a shopping-center lease will not disrupt the shopping center's tenant mix or balance.[64] To invoke that protection, however, the Lessor must establish both that the Shopping Center has an intended tenant mix or balance and that the asserted mix or balance formed part of the bargained-for exchange reflected in the Debtor's lease and the leases of other tenants.[65]

---

[62] *41 Acquisition Holdings, LLC v. Haff*, 365 So. 3d 1181, 1183–84 (Fla. 3d DCA 2023) (noting that a court is powerless to rewrite the contract to make it more reasonable or advantageous where an agreement is clear and unambiguous).

[63] *In re Trak Auto Corp.*, 367 F.3d at 245 ("Senator Hatch, in explaining the 1984 amendment to § 365(b)(3)(C), said that the 'amendment is not intended to enforce requirements to operate under a specified trade name.'" 130 Cong. Rec. S8891 (daily ed. June 29, 1984), reprinted in 1984 U.S.C.C.A.N. 590, 600.")

[64] 11 U.S.C. § 365(b)(3)(D).

[65] *In re Toys "R" Us Prop. Co. I, LLC*, No. 18-31429-KLP, 2019 WL 548643, at *6 (Bankr. E.D. Va. Feb. 11, 2019) (lessor failed to establish there was an intended tenant mix where none of

The Lessor has not made that showing. The Lease contains no reference to an intended tenant mix, tenant balance, or master plan for the Shopping Center.[66] Moreover, the Debtor proposes to continue the same retail operations it conducted before the petition date.[67] Assumption therefore will not alter the Debtor's place in the Shopping Center's existing tenant array or disrupt any tenant mix or balance cognizable under § 365(b)(3)(D). The Debtor can accordingly provide the adequate assurance required by that provision.

**IV. Conclusion**

The Lease's plain language does not require the Debtor to remain a franchisee of Third Dog Bakery, LLC. The Debtor's rejection of the Franchise Agreement therefore is not a default under the Lease. Nor is Section 2's reference to the Debtor's trade name material to the use covenant's purpose of defining the permitted use of the Leased Premises. Provided that the Debtor continues to operate at the Leased Premises in accordance with the Lease, assumption likewise will not disrupt the tenant mix or balance of the Lessor's Shopping Center.

---

the language in any of the leases referenced an intended tenant mix or master plan for the shopping center); *Lasalle Nat'l Tr., N.A. v. Trak Auto Corp.,* 288 B.R. 114, 125 (E.D. Va. 2003), *rev'd on other grounds*, *Trak Auto Corp. v. W. Town Ctr. LLC (In re Trak Auto Corp.)*, 367 F.3d 237 (4th Cir. 2004).

[66] Doc. No. 61 ¶ 7.

[67] Doc. No. 68-1.

The Debtor nevertheless remains in default of the Lease's signage requirements.[68] As conditions to assumption, the Debtor must remove the noncompliant signage, install replacement signage that the Lessor approves in writing, and pay all undisputed amounts due under the Lease. Subject to satisfaction of those cure conditions, the Court will approve the Debtor's assumption of the Lease.

Accordingly, it is

**ORDERED** that

1. The *Debtor J.L.E.T. Enterprises, LLC's Motion to Assume Unexpired Lease of Nonresidential Real Property on a Final or, Alternatively, Interim and Final Basis* is **GRANTED.**

2. As a condition of assumption, the Debtor is **DIRECTED** to pay the amounts due to the Lessor and remove and replace the noncompliant signage with signage approved in writing by Lessor.

Attorney Michael R. Del Lago is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.

[68] It is undisputed that the Debtor maintains signage without the approval required by the Lease. Doc. No. 96 ¶ 8. The Debtor has agreed, and the record reflects its ability, to cure that nonmonetary default upon assumption.